# Exhibit B

## Retention Agreement

## AGREEMENT FOR SERVICES

This Agreement dated as of August 22, 2011, is entered between Graceway Pharmaceuticals, LLC and related entities (collectively, "Customer") and BMC Group, Inc. ("BMC"). The services rendered by BMC pursuant to this Agreement will commence on the date first set forth above and will continue until the Agreement is terminated as set forth below.

## TERMS AND CONDITIONS

I. **ASSUMPTIONS**

The terms contemplated by this Agreement are based upon the following assumptions: 7 filing debtors; 5000 scheduled creditors or other parties in interest; up to 500 filed proofs of claim. Overnight courier charges to support "first day" noticing; otherwise noticing is to be effected via regular or electronic mail.

II. **SERVICES**

In accordance with the terms and conditions contained in this Agreement and in the Fee Schedule annexed hereto, BMC agrees to provide requested services as follows: (a) assisting the Customer, Counsel and Office of the Clerk with noticing and claims docketing and (b) assisting Customer with the compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the bankruptcy case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve all notices required in the bankruptcy cases as determined by Customer and/or Counsel; (2) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the bankruptcy cases; (3) create and maintain the official claims register(s) containing, among other things, PDF images of every proof of claim which will be in a format accessible through a website maintained by BMC; (4) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (5) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy cases; (6) assist Customer and Counsel with the administrative management, reconciliation and resolution of claims; (7) print, mail and tabulate ballots for purposes of plan voting; (8) assist with the maintenance of data re Customer's Schedules of Assets and Liabilities, Statements of Financial Affairs and other master lists and databases of creditors, assets and liabilities, (9) assist with the production of reports, exhibits and schedules of information or use by the Customer, Counsel or to be delivered the Court, the Clerk's Office, the U.S. Trustee or third parties; (10) provide other technical and document management services of a similar nature requested by Customer or the Clerk's office; and (11) set up and maintain a case website, including daily uploads of docket entries and other case related materials.

III. **TECHNOLOGY SUPPORT**

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, database modification, and/or other features.

IV. **PRICES, CHARGES AND PAYMENT**

A.  BMC agrees to charge, and Customer agrees to pay, BMC's standard prices for its services, expenses and supplies at the rates or prices in effect on the day such services and/or supplies are provided to the Customer, in accordance with the Fee Schedule annexed hereto.

B.  At the commencement of the Agreement, Customer may provide BMC with an initial advance payment retainer of $25,000.00 ("Retainer"). The Retainer will be applied to BMC's final bill for services and expenses rendered or incurred on behalf of Customer. After application to the final bill, the unapplied portion of the Retainer (if any) shall be promptly refunded to the Customer. Wire transfer information for the transmission of the retainer is as follows:

    | | |
    |---|---|
    | Bank Name - | Wells Fargo Bank |
    | Address - | 933 3rd Avenue, Seattle, WA 98104 |
    | ABA/Routing # - | 121000248 |
    | Account Name - | BMC Group, Inc. |
    | Account # - | 0033022633 |

C.  Although BMC raises its rates from time to time and generally does so each January, no rate increases shall be applied during the term of this Agreement.

D.  Customer agrees to pay BMC for any necessarily incurred out-of-pocket reasonable expenses for postage, shipping, courier, transportation, lodging, meals and items related to provision of services contemplated by this Agreement.

E.  BMC agrees to invoice Customer for fees and expenses and Customer agrees that the amount invoiced is due and payable upon its receipt of the invoice. Such invoices will include the date and description of time spent or expense incurred. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Customer further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) interest on the amount unpaid, accruing from the invoice date. In the case of a dispute in the invoice amount, notice shall be given to BMC within thirty (30) days of receipt of the invoice by Customer. Interest shall not accrue on any amounts in dispute. The balance of the invoice amount is due and payable in the normal course.

F.  Notwithstanding interest charges contemplated in paragraph III.E. or material changes to the assumptions contained in paragraph I above, BMC agrees that the entire amount payable by Customer in connection with BMC's fees and expenses under this Agreement is subject to a maximum of              BMC and Customer agree to immediately and reasonably address fee issues should they arise.

G.  BMC will look only to the Customer for payment of invoices and in no event shall Counsel be liable for any of BMC's invoices in connections with this Services Agreement.

V.  **WARRANTY**

The BMC warranty under the Agreement shall be limited to the re-running, at its expense, of any inaccurate reports, provided that such inaccuracies were caused solely as a result of BMC performance hereunder and provided further that BMC shall receive written notice of such inaccuracies. Customer agrees that the foregoing constitutes the exclusive remedy available with respect to inaccurate reports.

VI. **RIGHTS OF OWNERSHIP**

A.  The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B. Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC.

C. Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the non-proprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

D. Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

VII. NON-SOLICITATION

Customer agrees that it shall not, directly or indirectly, solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties.

VIII. CONFIDENTIALITY

A. BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors to, safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section VII "Confidentiality" (the "Confidential Information"). BMC will use the Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to, keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Agreement.

IX. TERMINATION

A. This Agreement shall remain in force until terminated by Customer, or, by BMC upon thirty (30) days' prior written notice to the other party.

B. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or

destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

X. **SYSTEM IMPROVEMENTS**

BMC's policy is to provide continuous improvements in the quality of service to the Customer. BMC, therefore, reserves the right to make changes in operations procedures, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the BMC data center serving the Customer.

XI. **LIMITATIONS OF LIABILITY AND INDEMNIFICATION**

Except with respect to breaches under Section VII "Confidentiality" above, Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. Except with respect to breaches under Section VII "Confidentiality" above, BMC shall be without liability to Customer with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. Except with respect to breaches under Section VII "Confidentiality" above, in no event shall liability to Customer for any losses or damages, whether direct or indirect, arising out of this Agreement exceed the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage. Except with respect to breaches under Section VII "Confidentiality", in no event shall BMC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

XII. **NOTICES**

All notices in connection with this Agreement shall be given or made upon the respective parties in writing by facsimile or overnight courier and shall be deemed as given, if by facsimile, on the business day immediately following confirmed transmission, or if by courier, on the day it is delivered by such courier to the appropriate address set forth below:

| BMC Group, Inc. | Graceway Pharmaceuticals, LLC |
|---|---|
| Attn: Tinamarie Feil | Attention: John Bellamy |
| 600 1st Avenue Suite 300 | 340 MLK Jr Blvd, Suite 500 |
| Seattle, WA 98104 | Bristol, TN 37620 |
| Telephone 206.499.2169 | Telephone 423.274.2120 |
| Fax 206.374.2727 | Fax 423.274.2199 |
| tfeil@bmcgroup.com | john.bellamy@gracewaypharma.com |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

/ / /

## XIII. APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of Delaware and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

## XIV. ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Agreement may not be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer bankruptcy cases, the term of the order shall govern.

## XIV. ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by BMC to a wholly owned subsidiary of BMC.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

| BMC Group, Inc. | Graceway Pharmaceuticals, LLC |
|---|---|
| *[signature]* | *[signature]* |
| By: Tinamarie Feil | By: BRIAN G. ShRadeR |
| President, Client Services | Chief Financial Officer |
| | Title: |
| Date: August ___, 2011 | Date: August 22, 2011 |

# bmcgroup

## Standard Pricing: Restructuring Services

**Claims & Noticing Management**

| | |
|---|---|
| Data Entry | $25 per hour |
| Clerk/Admin Support | $45 per hour |
| Analysts | $80 - $110 per hour |
| Case Manager | $125 per hour |

**Case Management Consulting**

| | |
|---|---|
| Consultants | $110 - $150 per hour |
| Managers | $175 - $225 per hour |
| Principal/Director | $250 per hour |

**Average Overall Hourly Rate**     **<$125 per hour**

**Claims Agent and b-Linx™ Claims Management Platform**

| | |
|---|---|
| Claim Receipt, Process & Docketing | $2.50 per claim (all in, no per hour charges) |
| Claim Imaging and b-Linx Association | $0.12 per image (OCR available @ $.02 per image) |
| b-Linx Access and Maintenance | $0.07 per record/mo ($250 min/cap at $850, no per user fee) |
| Claim Analysis, Reconciliation, Objections | upon request at applicable Case Management Consulting rates |

**Print Mail and Noticing Services**

| | |
|---|---|
| Copy/Print | $0.10 per image (volume discounts apply) |
| Envelope + Address Printing/Labeling | $0.08 standard/catalogue or custom varies) |
| Finishing (Fold or Collate, Insertion, Seal, Mail) | $0.05 per document |
| Postage/Shipping/Courier | at cost (includes optimization recommendations) |
| *Certified* Electronic Noticing Service | $20 per 500 ($0.04 per notice, no per page charge) |
| *Certified* Fax Noticing Service | $0.15 per image |
| Prep, Notarize, File Standard Proof of Service | $25.00 (no hourly charges) |
| Processing Undeliverables | $0.25 each + actual cost of re-mails as applicable |
| Create/maintain Noticing Database & Service Lists | at applicable Claims & Noticing Management rates |
| Management of Noticing Requests | at applicable Claims & Noticing Management rates |
| Legal Notice Publication | quote (discounts may be available) |

**Document and Information Management**

| | |
|---|---|
| Document Imaging and b-Linx association | $0.12 per image (OCR capture if desired $0.02 per image) |
| Live Operator Call Center | $45 per hour |
| Custom Website Hosting | Set up, plus $250 per month |
| Secure Virtual Data Room | Set up, plus $0.15/page per month |
| Physical Document Storage | $1.45 per box/month |
| Document Analysis, Website Maintenance | at applicable Case Management Consulting rates |

**Subscription/Solicitation/Exchange**

| | |
|---|---|
| Materials Print and Notification | at applicable Print Mail and Noticing Services rates |
| Ballot Receipt, Processing, Tabulation | at applicable Case Management Consulting rates |
| Interface Public Securities Holders | at applicable Case Management Consulting rates |

Distribution Services     **quote**