# EXHIBIT A

## Proposed Final DIP Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GRACEWAY PHARMACEUTICALS, LLC, *et al.*,[1] | Case No. 11-13036 (PJW) |
| | Joint Administration Requested |
| Debtors. | **Related Docket No. 15 & 52** |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364

### ("*Final DIP Order*")

Upon the motion, dated September 29, 2011, (the "***DIP Motion***"), of Graceway Pharma Holding Corp. ("***Parent***"), Graceway Holdings, LLC ("***Holdings***"), Graceway Pharmaceuticals, LLC (the "***Borrower***"), and the other debtors in possession (collectively, the "***Debtors***") in the above-referenced Chapter 11 cases (the "***Chapter 11 Cases***" and each of the Chapter 11 Cases upon either appointment of any trustee or any other estate representative or conversion to a case under Chapter 7 of the Bankruptcy Code (as defined below) and any other proceedings related to the Chapter 11 Cases, a "***Successor Case***"), seeking entry of an interim order (the "***Interim Order***") and this final order (this "***Final Order***") pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(3), 364(d)(1), 364(e), 507 and 552 of Chapter 11 of title 11 of the United States

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Graceway Pharma Holding Corp., a Delaware corporation (9175), Case No. 11-13037 (PJW); Graceway Holdings, LLC, a Delaware limited liability company (2502), Case No. 11-13038 (PJW); Graceway Pharmaceuticals, LLC, a Delaware limited liability company (5385), Case No. 11-13036 (PJW); Chester Valley Holdings, LLC, a Delaware limited liability company (9457), Case No. 11-13039 (PJW); Chester Valley Pharmaceuticals, LLC, a Delaware limited liability company (3713), Case No. 11-13041 (PJW); Graceway Canada Holdings, Inc., a Delaware corporation (6663), Case No. 11-13042 (PJW); and Graceway International, Inc., a Delaware corporation (2399), Case No. 11-13043 (PJW). The mailing address for Graceway Pharmaceuticals, LLC is 340 Martin Luther King Jr. Blvd., Suite 500, Bristol, TN 37620 (Attn: John Bellamy). On October 4, 2011, Graceway Canada Company filed an application in the Ontario Superior Court of Justice (Commercial List) pursuant to the *Courts of Justice Act*, R.S.O. 1990, c. C. 43.

Code (as amended, the "***Bankruptcy Code***"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002-1 and 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "***Local Rules***"), that, among other things[2]:

    (i)  authorizes the Debtors to use Prepetition Collateral (as defined below), including, without limitation, "cash collateral," as such term is defined in Section 363 of the Bankruptcy Code (the "***Cash Collateral***"), in which the Prepetition Secured Parties (as defined below) have a Lien or other interest, whether existing on the Petition Date (as defined below), arising pursuant to this Final Order or otherwise;

    (ii)  authorizes the Borrower to obtain, and authorizes each of the other Debtors (other than Parent) unconditionally to guarantee, jointly and severally, the Borrower's obligations in respect of, senior secured postpetition financing, which if approved would consist of $6,000,000 in aggregate principal amount of intercompany term loans (the "***Intercompany Loan***") from Graceway Canada Company ("***Graceway Canada***" and in its capacity as lender under the Intercompany Loan, the "***Postpetition Lender***") to the Borrower;

    (iii)  grants, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties' Adequate Protection (as defined below);

    (iv)  authorizes the Borrower and each of the other Debtors to grant to the Postpetition Lender the DIP Protections (as defined below);

    (v)  modifies the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Final Order and subject in all respects to the Debtors' rights under paragraph 14 herein; and

---

[2]  Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the First Lien Credit Agreement (as defined below).

(vi) waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Final Order.

Having considered the DIP Motion, the *Declaration of Gregory C. Jones in Support of Chapter 11 Petitions and First Day Motions* (the "***First Day Declaration***"), the evidence submitted or proffered at the hearing to consider the entry of the Interim Order (the "***Interim Hearing***"), and the evidence submitted or proffered at the hearing to consider the entry of this Final Order (the "***Final Hearing***"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and Local Rules 4001-2 and 2002-1, notice of the DIP Motion and the Final Hearing having been provided in a sufficient manner; a Final Hearing having been held and concluded on November 7, 2011; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[3], that:**

A.   **Petition Date**.   On September 29, 2011, (the "***Petition Date***"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "***Court***"). The Debtors have continued in the management and operation of their business and properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On October 12, 2011, the United States Trustee for the District of Delaware (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases pursuant to Section 1102 of the

01: 11578231.1
070559.1001

Bankruptcy Code (the "***Committee***"). No trustee or examiner has been appointed in the Chapter 11 Cases.

B. **Jurisdiction and Venue**. This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rules 2002-1 and 4001-2.

C. **Notice**. The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2(b). Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on September 29, 2011, to certain parties in interest, including: (i) the United States Trustee for the District of Delaware; (ii) financing counsel to the First Lien Agent (as defined below); (iii) special restructuring and bankruptcy counsel to the First Lien Agent; (iv) counsel to the Second Lien Agent (as defined below); (v) the administrative agent for the lenders under the Debtors' prepetition unsecured mezzanine credit facility; (vi) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (vii) the Food and Drug Administration; (viii) the Internal Revenue Service; (ix) the U.S. Public Health Service; (x) the Centers for Medicare and Medicaid Services; (xi) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (xii) each entity with an interest in the Prepetition Collateral (as defined below). The aforementioned notices are appropriate under the

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

circumstances, and no other or further notice of the DIP Motion, the relief requested therein and the Final Hearing is required for entry of this Final Order.

D.    **Debtors' Stipulations Regarding the Prepetition Secured Credit Facilities**. Without prejudice to the rights of parties in interest to the extent set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge and agree (paragraphs D(i) through D(ix) hereof shall be referred to herein collectively as the "***Debtors' Stipulations***") as follows:

(i)    First Lien Credit Facility.    Pursuant to that certain First Lien Credit Agreement dated as of May 3, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "***First Lien Credit Agreement***"), among, *inter alia*, Holdings, the Borrower, the lenders party thereto (collectively, the "***First Lien Lenders***"), and Bank of America, N.A. ("***BofA***"), as administrative agent for the First Lien Lenders and collateral agent for the First Lien Claimholders (as defined in the Intercreditor Agreement (as defined below), without giving effect to any cap provided for therein) (BofA, in such capacity, the "***First Lien Agent***"), Swing Line Lender and L/C Issuer, the First Lien Agent, the First Lien Lenders, the Swing Line Lender and the L/C Issuer agreed to extend certain loans to, and issue letters of credit for the account of, the Borrower. The First Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the First Lien Credit Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "***First Lien Documents***" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the First Lien Credit Agreement, together with any other First Lien Obligations (as defined in the Intercreditor Agreement without giving effect to any cap provided for therein), shall collectively be referred to herein as the "***First Lien Obligations***."

(ii)   Second Lien Credit Facility.   Pursuant to that certain Second Lien Credit Agreement dated as of May 3, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "***Second Lien Credit Agreement***"), among, *inter alia*, Holdings, the Borrower, the lenders party thereto (collectively, the "***Second Lien Lenders***") and Deutsche Bank Trust Company Americas ("***DB***"), as administrative agent for the Second Lien Lenders and collateral agent for the Second Lien Claimholders (as defined in the Intercreditor Agreement) (the Second Lien Claimholders and First Lien Claimholders collectively, the "***Prepetition Secured Parties***") (DB, in such capacity, the "***Second Lien Agent***"), the Second Lien Agent and the Second Lien Lenders agreed to extend certain loans to the Borrower.   The Second Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Second Lien Credit Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "***Second Lien Documents***" (as the same may be amended, restated, supplemented or otherwise modified from time to time).   All obligations of the Debtors arising under the Second Lien Credit Agreement, together with any other Second Lien Obligations (as defined in the Intercreditor Agreement), shall collectively be referred to herein as the "***Second Lien Obligations***" and, together with the First Lien Obligations, the "***Prepetition Obligations***."

(iii)   First Priority Liens and First Lien Collateral.   Pursuant to the Collateral Documents (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "***First Lien Collateral Documents***"), by and between each of the Debtors (other than Parent) and the First Lien Agent, each Debtor (other than Parent) granted to the First Lien Agent, for the benefit of the First Lien Claimholders, to secure the First Lien Obligations, a valid, binding, enforceable and perfected first priority continuing security interest in substantially

all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising (the "*First Priority Liens*"). All collateral granted or pledged by the Debtors (other than Parent) pursuant to any First Lien Collateral Document or any other First Lien Document, including, without limitation, the Collateral (as defined in the First Liens Credit Agreement), and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "*First Lien Collateral*."

(iv)     <u>Second Priority Liens and Second Lien Collateral</u>.     Pursuant to the Collateral Documents (as defined in the Second Lien Credit Agreement) (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "*Second Lien Collateral Documents*"), by and between each of the Debtors (other than Parent) and the Second Lien Agent, each Debtor (other than Parent) granted to the Second Lien Agent, for the benefit of the Second Lien Claimholders, to secure the Second Lien Obligations, a valid, binding, enforceable and perfected second priority continuing security interest in substantially all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising (the "*Second Priority Liens*" and, together with the First Priority Liens, the "*Prepetition Liens*"). All collateral granted or pledged by the Debtors (other than Parent) pursuant to any Second Lien Collateral Document or any other Second Lien Document, including, without limitation, the Collateral (as defined in the Second Lien Credit Agreement), and all prepetition and postpetition proceeds thereof shall collectively be referred to

7

herein as the "**Second Lien Collateral**" and, together with the First Lien Collateral, the "**Prepetition Collateral**."

(v)    <u>Intercreditor Agreement</u>.  Pursuant to the Intercreditor Agreement, dated as of May 3, 2007 (the "**Intercreditor Agreement**" and, together with the First Lien Documents and the Second Lien Documents, the "**Prepetition Documents**"), among Holdings, the Borrower, the First Lien Agent, the Second Lien Agent and BofA as Control Agent, the Second Priority Liens are subject and subordinate on the terms contained in the Intercreditor Agreement to the First Priority Liens.

(vi)    <u>First Priority Liens and First Lien Obligations</u>.  (I) The First Priority Liens (a) are valid, binding, enforceable, and perfected Liens that have attached to the First Lien Collateral, (b) were granted to, or for the benefit of, the First Lien Claimholders, as applicable, for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination or other legal or equitable relief adversely affecting the First Priority Liens, in each case, pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein) and (d) are subject and subordinate in all respects only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below) and (C) the Prepetition Prior Liens (as defined below) and (II) (w) the First Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable First Lien Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses or counterclaims to any of the First Lien Obligations exist, (y) no portion of the First Lien Obligations or any payments made to any or all of the First Lien Claimholders is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or

01: 11578231.1             070559.1001

any other "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) the Guaranty of each Guarantor continues in full force and effect notwithstanding any use of the Prepetition Collateral, including, without limitation the Cash Collateral, permitted hereunder, or the Intercompany Loan.

      (vii)   <u>Second Priority Liens and Second Lien Obligations</u>.  (I) The Second Priority Liens (a) are valid, binding, enforceable, and perfected Liens that have attached to the Second Lien Collateral, (b) were granted to, or for the benefit of, the Second Lien Claimholders, as applicable, for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination or other legal or equitable relief adversely affecting the Second Priority Liens, in each case, pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein) and (d) are subject and subordinate in all respects only to (A) the DIP Liens, (B) the Carve-Out, (C) the Prepetition Prior Liens and (D) the First Priority Liens (pursuant to the terms of the Intercreditor Agreement), and (II) (w) the Second Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Second Lien Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Second Lien Obligations exist, (y) no portion of the Second Lien Obligations or any payments made to any or all of the Second Lien Claimholders is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or any other "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) the Guaranty (as defined in the Second Lien Credit Agreement) of each Guarantor (as defined in the Second Lien Credit Agreement) continues in full force and effect

01: 11578231.1            070559.1001

notwithstanding any use of the Prepetition Collateral, including, without limitation the Cash Collateral, permitted hereunder, or the Intercompany Loan.

(viii) <u>Amounts Owed under Prepetition Documents</u>. As of the Petition Date, the Debtors were truly and justly indebted (i) to the First Lien Claimholders pursuant to the First Lien Documents, without defense, counterclaim or offset of any kind, in respect of loans made and letters of credit issued by the First Lien Agent, the First Lien Lenders, the L/C Issuer and the Swing Line Lender in the aggregate principal amount of not less than $430,698,397.58, including, without limitation, an undrawn letter of credit in the amount of $350,000.00, *plus* all accrued or, subject to Section 506(b) of the Bankruptcy Code, hereafter accruing, and unpaid interest thereon, and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Documents) now or hereafter due under the First Lien Credit Agreement and the other First Lien Documents and (ii) to the Second Lien Claimholders pursuant to the Second Lien Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the Second Lien Agent and Second Lien Lenders in the aggregate principal amount of not less than $330,000,000, *plus* all accrued and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Documents), in each case, due under the Second Lien Credit Agreement and the other Second Lien Documents as of the Petition Date.

(ix) <u>Release of Claims</u>. The Debtors have conducted a full and complete investigation and have concluded (for themselves but not on behalf of their estates) that they do not possess any valid Secured Party Releasee Claims (as defined below) against any of the

01: 11578231.1          070559.1001

Secured Party Releasees (as defined below). Subject to the rights of parties in interest to the extent set forth in paragraph 7 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released the First Lien Agent, First Lien Claimholders, the Second Lien Agent and the Second Lien Claimholders, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "*Secured Party Releasees*") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Secured Party Releasees, whether arising at law or in equity, with respect to the First Lien Obligations, First Priority Liens, Second Lien Obligations and Second Priority Liens, as applicable, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the First Lien Obligations or Second Lien Obligations, as applicable, or the validity, enforceability, priority, perfection or non-avoidability of the First Priority Liens or Second Priority Liens, as applicable, securing the First Lien Obligations or Second Lien Obligations, as applicable (all of the foregoing, the "*Secured Party Releasee Claims*").

      E.     **Need to Use the Prepetition Collateral (including, without limitation, the Cash Collateral) and to Obtain Intercompany Loan**.

      (i)     The Debtors have an immediate need to use the Prepetition Collateral, including, without limitation, the Cash Collateral, and obtain the Intercompany Loans, to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital

expenditures and to satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the use of the Cash Collateral and borrowing the Intercompany Loan is of vital importance and in the best interest of the Debtors' estates.

(ii)     As demonstrated by evidence introduced at the Interim Hearing and Final Hearing on this Motion prior to the entry of this Final Order, the Debtors are unable to obtain (A) financing on more favorable terms from a source other than the Postpetition Lender, (B) adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, and (C) secured credit allowable under Sections 364(c) and (d) of the Bankruptcy Code, in each case, without (1) granting to the Postpetition Lender the rights, remedies, privileges, benefits and protections provided herein, including, without limitation, the DIP Liens and the DIP Super-Priority Claims (as defined below, and together with the DIP Liens, the "*DIP Protections*") and (2) providing the Prepetition Secured Parties the adequate protection more fully described in paragraph F below.

F.     <u>**Adequate Protection for Prepetition Secured Parties**</u>.  The First Lien Agent and certain First Lien Lenders holding a majority of the First Lien Obligations and that have consented to the use of the Prepetition Collateral, including, without limitation, the Cash Collateral (the "*Majority First Lien Lenders*"), have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, to fund the administration of the Debtors' estates and maintain the continued operation of their businesses.  The First Lien Agent and Majority First Lien Lenders have agreed to permit the Debtors to use the Prepetition Collateral, including, without limitation, the Cash Collateral, for the period through the Cash Collateral Termination Date (as defined below), subject to the terms and conditions set forth herein.  In addition, the Intercompany Loan contemplated hereby

01: 11578231.1                                   070559.1001

provides for a priming of the Prepetition Liens pursuant to Section 364(d) of the Bankruptcy Code. The Prepetition Secured Parties are entitled to the adequate protection set forth herein pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code for the Diminution in Value (as defined below) of the Prepetition Collateral. Based on the DIP Motion and on the record presented to this Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements, the use of the Prepetition Collateral, including, without limitation, the Cash Collateral and the Intercompany Loan, in each case, contemplated hereby are fair and reasonable and reflect the Debtors' prudent exercise of business judgment.

G.    **Limited Consent**. The consent of the First Lien Agent and Majority First Lien Lenders to (i) the priming of the First Priority Liens by the DIP Liens is limited to the financing presently before this Court, with Graceway Canada as lender, and shall not, and shall not be deemed to, extend to any other postpetition financing or to any modified version of the Intercompany Loan and (ii) the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, is limited to use of the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to the terms of this Final Order and shall not, and shall not be deemed to, extend to any other use of the Prepetition Collateral, including, without limitation, the Cash Collateral. Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the First Lien Agent or any First Lien Claimholder are or will be adequately protected with respect to any non-consensual postpetition financing or use of Prepetition Collateral, including, without limitation, the Cash Collateral.

H.    **Section 552(b)**. In light of the subordination of the Prepetition Liens to (i) in the case of the First Lien Claimholders, the Carve-Out and DIP Liens, and (ii) in the case of the

01: 11578231.1

Second Lien Claimholders, the Carve-Out, DIP Liens and Adequate Protection Replacement Liens (as defined below) granted to the First Lien Agent for the benefit of the First Lien Claimholders, each of the First Lien Claimholders and Second Lien Claimholders is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

I.  **Business Judgment and Good Faith Pursuant to Section 364(e)**. Based on the record presented to this Court by the Debtors, it appears that:

(i)  Graceway Canada has indicated a willingness to provide postpetition secured financing via the Intercompany Loan to the Borrower in accordance with this Final Order.

(ii)  The terms and conditions of the Intercompany Loan pursuant to this Final Order are fair, reasonable and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and consideration.

(iii)  The Intercompany Loan was negotiated in good faith among the Debtors and the Postpetition Lender and shall be deemed to have been extended by the Postpetition Lender for valid business purposes and uses and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and the DIP Liens and the DIP Super-Priority Claims shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

01: 11578231.1
070559.1001

J.     **Relief Essential; Best Interest**.  Absent granting the relief set forth in this Final Order, the Debtors' estates and their ability successfully to operate their businesses will be immediately and irreparably harmed.  Consummation of the Intercompany Loan and authorization of the use of Prepetition Collateral, including, without limitation, the Cash Collateral, in accordance with this Final Order is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the First Lien Agent, the Majority First Lien Lenders and the Postpetition Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order.  Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.     **Use of the Prepetition Collateral (including, without limitation, the Cash Collateral) and Authorization to Incur Intercompany Loan**.  To enable the Debtors to continue to operate their business, the Debtors are hereby authorized to use the Prepetition Collateral, including, without limitation, the Cash Collateral, and the Borrower is hereby authorized to borrow and use the proceeds of the Intercompany Loan, in each case, only in accordance with the terms and conditions of this Final Order, including, without limitation, the Approved Budget and Budget Covenants (in each case, as defined below).  Any amount repaid under the Intercompany Loan may not be reborrowed.

01: 11578231.1                                         070559.1001

3.    **Approved Budget; Budget Covenants; Events of Default**.

(a)    <u>Approved Budget</u>.    Attached hereto as <u>Exhibit A</u> is (i) a rolling weekly cash flow budget from and including the Petition Date through and including January 27, 2012 (the "***Pre-Sale Approved Budget***") and (ii) a rolling monthly cash flow budget from and including January 28, 2012 through and including June 30, 2012 (the "***Wind-Down Approved Budget***" and together with the Pre-Sale Approved Budget, the "***Approved Budget***"), in each case, (A) as may be amended or modified from time to time with the consent of the First Lien Agent and the Approving Majority First Lien Lenders (as defined below) and (B) reflecting on a line-item basis the Debtors' projected (1) aggregate cash receipts, (2) disbursements (including, without limitation, professional fees and capital expenditures) and (3) cash on hand (collectively, "***Aggregate Liquidity***"), in each case, on a weekly or monthly basis, as applicable; <u>provided</u>, that if (x) the Debtors shall have filed plans of reorganization or liquidation in the Chapter 11 Cases that are reasonably acceptable to the First Lien Agent and Approving Majority First Lien Lenders and the Court shall have entered an order approving the Debtors' disclosure statement in connection with such plans of reorganization or liquidation, in each case, on or before June 30, 2012 and (y) the Debtors are using reasonable best efforts to confirm such plans of reorganization or liquidation, the Wind-Down Approved Budget shall automatically be extended to include the period from and including June 30, 2012 to and including July 31, 2012; <u>provided</u>, <u>however</u>, that the Debtors shall be prohibited from using Prepetition Collateral, including, without limitation, Cash Collateral, pursuant to such extended Wind-Down Approved Budget in excess of the amounts provided under the Wind-Down Approved Budget through and including June 30, 2012.

(b)    <u>Budget Covenants</u>.

(i) From and including the Petition Date to and including January 27, 2012, for each 8-week period set forth in the Pre-Sale Approved Budget, tested weekly on a rolling basis by reference to the Pre-Sale Variance Report (as defined below), commencing with the 8-week period ending November 25, 2011, the aggregate disbursements (including, without limitation, professional fees (but excluding the First Lien Professional Fees (as defined below) and the Committee's professional fees permitted under the Pre-Sale Approved Budget and the amounts budgeted therefor) and capital expenditures) by the Debtors shall not exceed one hundred fifteen percent (115%) of the aggregate amount of disbursements budgeted for each such 8-week period pursuant to the Pre-Sale Approved Budget. The Debtors shall provide to the Postpetition Lender, a duly appointed representative of Graceway Canada (the "**Canadian Representative**"), the First Lien Agent, the Second Lien Agent and the Committee, so as actually to be received on or prior to the Thursday following the end of each week, commencing with the Thursday following the fourth week after the Petition Date, a variance report (a "**Pre-Sale Variance Report**") certified by the chief executive officer, chief financial officer, treasurer, controller or general counsel of the Borrower (each an "**Authorized Officer**"), in form acceptable to the Postpetition Lender, the First Lien Agent and the Approving Majority First Lien Lenders, each, in their respective sole discretion, setting forth (A) the actual cash receipts and aggregate disbursements (including, without limitation, professional fees (including, without limitation, the First Lien Professional Fees and the Committee's professional fees permitted under the Pre-Sale Approved Budget) and capital expenditures) for such immediately preceding calendar week and the Aggregate Liquidity as of the end of such calendar week (provided, however, that the initial Pre-Sale Variance Report provided by the Debtors in accordance with the terms of this Final Order shall set forth actual cash receipts and aggregate disbursements (including, without

limitation, professional fees (including, without limitation, the First Lien Professional Fees and the Committee's professional fees permitted under the Pre-Sale Approved Budget) and capital expenditures) for each immediately preceding calendar week since the Petition Date and the Aggregate Liquidity as of the end of each such calendar week) and (B) with respect to each 8-week period commencing with the 8-week period ending on the Friday of the eighth week after the Petition Date, the variance in dollar amounts and percentage terms of the actual aggregate disbursements (including, without limitation, professional fees (but excluding the First Lien Professional Fees and the Committee's professional fees permitted under the Pre-Sale Approved Budget and the amounts budgeted therefor) and capital expenditures) from those reflected for the corresponding period in the Pre-Sale Approved Budget.

(ii)    From and including January 28, 2012 through and including June 30, 2012 (or, if the Wind-Down Approved Budget is extended in accordance with paragraph 3(a) above, July 31, 2012), for each period from January 28, 2012 through the end of each month thereafter set forth in the Wind-Down Approved Budget, tested at the end of each such month on a cumulative basis by reference to the Wind-Down Variance Report (as defined below) (it being understood that (I) the period from and including January 28, 2012 to and including January 31, 2012 shall be included in the period tested at the end of February 2012 and (II) an amount equal to the aggregate amount of all budgeted disbursements incurred but not paid during the 8-week period ending January 27, 2012 under the Pre-Sale Approved Budget (if any) shall be added to the "Designated Account, excl Wind Down Expenses" line item in the Wind-Down Approved Budget for the month of February 2012[4]), the aggregate disbursements (including, without limitation, professional fees (but excluding the First Lien Professional Fees and the Committee's

---

[4] The Wind-Down Approved Budget currently contains an estimate for such amount.

professional fees permitted under the Wind-Down Approved Budget and the amounts budgeted therefor) and capital expenditures) by the Debtors shall not exceed one hundred ten percent (110%) of the aggregate amount of disbursements budgeted for each such cumulative period pursuant to the Wind-Down Approved Budget. The Debtors shall provide to the Postpetition Lender, the Canadian Representative, the First Lien Agent, the Second Lien Agent and the Committee, so as actually to be received on or prior to the fourth business day immediately following the end of each month, commencing with the fourth business day of March 2012, a variance report (a *"Wind-Down Variance Report"*) certified by an Authorized Officer, in form acceptable to the Postpetition Lender, the First Lien Agent and the Approving Majority First Lien Lenders, each, in their respective sole discretion, setting forth (A) the actual cash receipts and aggregate disbursements (including, without limitation, professional fees (including, without limitation, the First Lien Professional Fees and the Committee's professional fees permitted under the Wind-Down Approved Budget) and capital expenditures) for such immediately preceding month and the Aggregate Liquidity as of the end of such immediately preceding month, and (B) with respect to each such cumulative period, the variance in dollar amounts and percentage terms of the actual aggregate disbursements (including, without limitation, professional fees (but excluding the First Lien Professional Fees and the Committee's professional fees permitted under the Wind-Down Approved Budget and the amounts budgeted therefor) and capital expenditures) from those reflected for the corresponding period in the Wind-Down Approved Budget.

(iii)     The proceeds of the Intercompany Loan (subject to paragraph 5(a) below) and the Cash Collateral shall be used only as follows: (A) prior to the Cash Collateral Termination Date, solely for payment of the disbursements set forth in the Approved Budget

subject to the terms and conditions of this Final Order (including, without limitation, any variance permitted under this paragraph 3(b)) and (B) on or after the Cash Collateral Termination Date, solely (x) to fund (1) unpaid fees required to be paid in these Chapter 11 Cases to the clerk of this Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a), whether arising prior to or after the delivery of the Carve-Out Trigger Notice (as defined below), in an amount equal to $201,250, (2) any unpaid amounts incurred and earned prior to the occurrence of the Cash Collateral Termination Date under each of the Debtors' Professionals Carve-Out Cap (as defined below) and Committee Professionals Carve-Out Cap (as defined below), (3) the Debtors' Professionals Post Carve-Out Cap (as defined below) and Committee Professionals Post Carve-Out Cap (as defined below) and (4) the Expense Reimbursement Amount (as defined in the Asset Purchase Agreement (as defined in the DIP Motion)) (the aggregate of such amounts in clauses (1), (2), (3) and (4) above, the "*Maximum Carve-Out Amount*") (it being understood that such unpaid fees required to be paid in these Chapter 11 Cases to the clerk of this Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a), the pre-funded amounts incurred and earned prior to the occurrence of the Cash Collateral Termination Date under each of the Debtors' Professionals Carve-Out Cap and Committee Professionals Carve-Out Cap, the pre-funded amounts in respect of the Debtors' Professionals Post Carve-Out Cap and Committee Professionals Post Carve-Out Cap and the Expense Reimbursement Amount shall be escrowed in accordance with paragraph 8(e) below and paid, as applicable, to the clerk of the Court or to the office of the U.S. Trustee when such amounts are due, to the applicable retained professionals only if and when such amounts are incurred, earned and allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code) and to the Buyer (as defined in the Asset Purchase Agreement) solely in accordance with the terms of the Asset Purchase Agreement and the

Bidding Procedures Order (as defined in the Asset Purchase Agreement) and (y) to pay the First Lien Professional Fees.

The undertakings of the Debtors provided for in this paragraph 3(b) shall be collectively referred to herein as the "***Budget Covenants***."

(c)     Events of Default.  Subject to paragraph 14(b) below, upon the occurrence of any Event of Default (as defined below), the consensual Cash Collateral use arrangement contained in this Final Order shall terminate automatically without any further notice or action (including, without limitation, further notice, motion or application to, order of or hearing before this Court) unless the occurrence of such Event of Default is waived in writing at any time by at least two First Lien Lenders holding in aggregate a majority of the then outstanding First Lien Obligations held by the Consenting First Lien Lenders (as defined in the Sale Support Agreement, dated as of September 28, 2011 (the "***Sale Support Agreement***"), entered by and among the Debtors, Graceway Canada and the First Lien Lenders from time to time party thereto) (the "***Approving Majority First Lien Lenders***").  Each of the following events shall constitute an event of default (collectively, the "***Events of Default***"):

> (i)     on or prior to January 27, 2012, with respect to each of the following line items in the Pre-Sale Approved Budget, the payment by the Debtors of any disbursements in excess of the cumulative amount budgeted for each such line item in the Pre-Sale Approved Budget plus fifteen percent (15%) of each such cumulative budgeted amount: (i) "Payroll & Benefits", (ii) "R&D, Licensing & Regulatory", (iii) "Advertising & Promotions and Sales Expenses", (iv) "Corporate, Occupancy, Utilities & Other Expenses", (v) "Ropes & Gray", (vi) "Edwards Angell Palmer & Dodge", (vii) "Hogan Lovells US LLP", (viii) "Other Non-Restructuring Professionals" and (ix) "CapEx";

> (ii)     after January 27, 2012, with respect to the "Wind Down Expenses - Corporate, Employee & Other" line item in the Wind-Down Approved Budget, the payment by the Debtors of any disbursements in excess of the cumulative amount budgeted for such line item in the Wind-Down Approved Budget plus ten percent (10%) of each such cumulative budgeted amount;

> (iii)     any violation of the Budget Covenants;

01: 11578231.1                               070559.1001

(iv)    (A) the entry of an order by any court invalidating, disallowing or limiting in any respect, as applicable, either (1) the enforceability, priority, or validity of the First Priority Liens or Adequate Protection Replacement Liens, in each case, securing the First Lien Obligations or (2) any of the First Lien Obligations or Adequate Protection Super-Priority Claims (as defined below) granted to the First Lien Claimholders or (B) with respect to any of the foregoing, any Debtor's application for, consent to, or acquiescence in, any such relief;

(v)     the incurrence by any Debtor after the Petition Date of indebtedness that is (A) secured by a security interest, mortgage or other Lien on all or any portion of the Prepetition Collateral which is equal or senior to any security interest, mortgage or other Lien of the First Lien Agent and the First Lien Claimholders, as applicable, or (B) entitled to priority administrative expense status which is equal or senior to that granted to the First Lien Agent and First Lien Claimholders, as applicable, herein, except, in each case, (x) any such indebtedness used to refinance the First Lien Obligations in full and (y) the Intercompany Loan;

(vi)    the entry of a final order by this Court (other than the Final Order) granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a Lien on or security interest in any Prepetition Collateral with a value in excess of $250,000 or (B) with respect to any Lien on or the granting of any Lien on any Prepetition Collateral to any state or local environmental or regulatory agency (in each case with a value in excess of $250,000);

(vii)   reversal, vacatur, stay or modification (without the express prior written consent of the Postpetition Lender, the First Lien Agent and the Approving Majority First Lien Lenders, in their respective sole discretion) of this Final Order;

(viii)  (A) the entry by this Court of an order, or the filing by the Debtors of a motion with this Court which seeks the entry of an order, accomplishing (x) the conversion of one or more of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or (y) the dismissal, termination, stay or modification of one or more of the Chapter 11 Cases or (B) with respect to any of the foregoing, any Debtor's application for, consent to, or acquiescence in, any such relief;

(ix)    the entry by this Court of an order, or the filing by the Debtors of a motion with this Court, which seeks the entry of an order, accomplishing the appointment of an interim or permanent trustee, receiver or examiner with expanded powers to operate or manage the financial affairs, business or reorganization of any Debtor in one or more of the Chapter 11 Cases;

(x)     any material breach by any Debtor of any of their obligations, representations, warranties or covenants set forth in this Final Order (except as covered by any other Event of Default under this paragraph 3(c)) or the Asset Purchase Agreement, as applicable, which material breach is not cured on or

within five (5) Business Days after the giving of written notice of such breach to the Debtors;

(xi)     any material breach by Graceway Canada of any of its obligations, representations, warranties or covenants set forth in the Asset Purchase Agreement, as applicable, which material breach is not cured on or within five (5) Business Days after the giving of written notice of such breach to the Debtors;

(xii)    the failure to make adequate protection payments or pay professional fees, costs and expenses of the First Lien Agent, in each case, when and as provided for under this Final Order;

(xiii)   the Debtors fail to file the Sale Motion (as defined in the DIP Motion) on or within three (3) Business Days following the Petition Date seeking approval of the Bidding Procedures (as defined in the Asset Purchase Agreement) and Sale (as defined in the DIP Motion) in this Court;

(xiv)    the Debtors fail to obtain entry by this Court of (a) the Bidding Procedures Order within forty-five (45) days after the Petition Date or (b) the Sale Order (as defined in the Asset Purchase Agreement) by January 2, 2012;

(xv)     (a) the termination of the Asset Purchase Agreement other than in connection with acceptance of an Alternative Transaction (as defined in the Asset Purchase Agreement) that is acceptable to the Postpetition Lender and Approving Majority First Lien Lenders in their respective sole discretion, (b) the amendment or modification of, or filing of a pleading by any Debtor seeking to amend or modify, the Asset Purchase Agreement or any documents related thereto (including, without limitation, the Bidding Procedures, Bidding Procedures Order or Sale Order), in a manner not acceptable to the Postpetition Lender and Approving Majority First Lien Lenders in their respective sole discretion or (c) execution of definitive documents in respect of an Alternative Transaction that are not acceptable to the Postpetition Lender and Approving Majority First Lien Lenders in their respective sole discretion;

(xvi)    the failure to consummate the Sale on or before January 27, 2012;

(xvii)   the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling or order enjoining the consummation of a material portion of the Sale;

(xviii)  the filing by any Debtor of any stand-alone plan of reorganization or liquidation (or the announcement of any Debtor's support of any such plan filed by any other party) prior to consummation of the Sale; and

(xix)    the entry by this Court of an order, or the filing by the Debtors of a motion with this Court which seeks the entry of an order, authorizing the use of Cash Collateral for any purpose other than to pay the First Lien Obligations in full or as permitted in this Final Order.

01: 11578231.1                                    070559.1001

provided, however, that the consensual use arrangement of Prepetition Collateral, including, without limitation, Cash Collateral, described in this Final Order shall, unless it shall have terminated earlier pursuant to the terms hereof, terminate on June 30, 2012 (unless extended automatically in accordance with paragraph 3(a) or by consent of the Approving Majority First Lien Lenders). The earliest date upon which the consensual Cash Collateral use arrangement described in this Final Order is terminated pursuant to this paragraph 3(c) shall be referred to herein as the *"Cash Collateral Termination Date."* In the event this Final Order terminates pursuant to this clause (c), the Adequate Protection Collateral (as defined below) will be used to fund the Maximum Carve-Out Amount pursuant to paragraph 8 below and to satisfy the Intercompany Loan pursuant to paragraph 5(d) before being used to satisfy any other obligation, including, without limitation, the First Lien Obligations.

(d)     <u>Payments on Account of Prepetition Obligations</u>. Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a Chapter 11 plan or plans with respect to any of the Debtors, except (i) as set forth in this Final Order; (ii) as provided in the first day orders, which first day orders shall be in form and substance reasonably acceptable to the Postpetition Lender, First Lien Agent and Majority First Lien Lenders; and (iii) as provided in the other motions, orders and requests for relief filed by the Debtors, each in form and substance reasonably acceptable to the Postpetition Lender, First Lien Agent and Approving Majority First Lien Lenders.

(e)     Enforceable Obligations. Subject to the rights of parties in interest to the extent set forth in paragraph 7 below, no obligation, payment, transfer or grant of security under this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the

01: 11578231.1

Bankruptcy Code or under any applicable law (including, without limitation, under Sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.     **Adequate Protection for Prepetition Secured Parties**. The Prepetition Secured Parties shall receive the following adequate protection (collectively referred to as the "***Prepetition Secured Parties' Adequate Protection***"):

(a)     Adequate Protection Replacement Liens. To the extent of the diminution in value of the respective interests of the Prepetition Secured Parties in the respective Prepetition Collateral, including, without limitation, the Cash Collateral, from and after the Petition Date, calculated in accordance with Section 506(a) of the Bankruptcy Code, resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral, including, without limitation, the Cash Collateral, the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out and the imposition or enforcement of the automatic stay of Section 362(a) (collectively, "***Diminution in Value***") (in addition to (but without duplication of) any claim for Diminution in Value that may arise during the course of the Chapter 11 Cases, the First Lien Claimholders shall have a valid, binding and enforceable claim for Diminution in Value equal to the aggregate amount of the Prepetition Collateral, including, without limitation, the Cash Collateral, used to pay the fees and expenses of the Debtors' Professionals (as defined below) and Committee Professionals (as defined below) and the expenses of the Committee

01: 11578231.1                    070559.1001

Members (as defined below), in each case, in connection with the Chapter 11 Cases or any Successor Case and in accordance with this Final Order), the First Lien Agent and Second Lien Agent, as applicable, for the benefit of the First Lien Claimholders and Second Lien Claimholders, as applicable, are hereby granted, subject to the terms and conditions set forth below, pursuant to Sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, replacement Liens upon all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the First Lien Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, seventy-five percent (75%) of the net proceeds realized from the Debtors' claims and causes of action under Sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (such claims and causes of action, together with the Section 549 Actions (as defined below), "*Avoidance Actions*"), one hundred percent (100%) of the net proceeds realized from the Debtors' claims or causes of action under Section 549 of the Bankruptcy Code (such claims and causes of action, the "*Section 549 Actions*"), rights under Section 506(c) of the Bankruptcy Code, all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal,

tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "*Adequate Protection Collateral*" and such adequate protection replacement liens, the "*Adequate Protection Replacement Liens*"). The Adequate Protection Replacement Liens on such Adequate Protection Collateral shall be subject and subordinate only to (i) the DIP Liens, (ii) the Prepetition Prior Liens, (iii) the payment of the Carve-Out and (iv) with respect to the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Claimholders only, the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Claimholders. For the avoidance of doubt, the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Claimholders shall be subordinated to the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Claimholders on the same basis as the Second Priority Liens are subordinated to the First Priority Liens under the Intercreditor Agreement.

(b) Adequate Protection Super-Priority Claims. To the extent of Diminution in Value, the First Lien Claimholders and Second Lien Claimholders are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "*Adequate Protection Super-Priority Claims*") against each of the Debtors pursuant to Sections 361, 363(e), 364(d)(1) and 507(b) of the Bankruptcy Code, which shall have priority, subject only to (i) the DIP Super-Priority Claims, (ii) the payment of the Carve-Out and (iii) with respect to the Adequate Protection Super-Priority Claims granted to the Second Lien Claimholders, the Adequate Protection Super-Priority Claims granted to the First Lien Claimholders, over all

01: 11578231.1
070559.1001

administrative expense claims, adequate protection and other diminution claims, unsecured claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment. The Adequate Protection Super-Priority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates (other than twenty-five percent (25%) of the net proceeds of the Avoidance Actions (other than Section 549 Actions) or as may otherwise be agreed by the First Lien Claimholders) and all proceeds thereof, provided, however, that (i) to the extent the Cash Collateral Termination Date shall have occurred, the Maximum Carve-Out Amount shall be funded and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims and (ii) to the extent the Cash Collateral Termination Date shall not have occurred, all amounts set forth in section 4(b) of the Sale Support Agreement shall be funded (provided, the Sale shall have been consummated) and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims, in each case, in accordance with the terms of this Final Order. Other than as provided in this Final Order with

28

administrative expense claims, adequate protection and other diminution claims, unsecured claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment. The Adequate Protection Super-Priority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates (other than twenty-five percent (25%) of the net proceeds of the Avoidance Actions (other than Section 549 Actions) or as may otherwise be agreed by the First Lien Claimholders) and all proceeds thereof, provided, however, that (i) to the extent the Cash Collateral Termination Date shall have occurred, the Maximum Carve-Out Amount shall be funded and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims and (ii) to the extent the Cash Collateral Termination Date shall not have occurred, all amounts set forth in section 4(b) of the Sale Support Agreement shall be funded (provided, the Sale shall have been consummated) and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims, in each case, in accordance with the terms of this Final Order. Other than as provided in this Final Order with

28

administrative expense claims, adequate protection and other diminution claims, unsecured claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment. The Adequate Protection Super-Priority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates (other than twenty-five percent (25%) of the net proceeds of the Avoidance Actions (other than Section 549 Actions) or as may otherwise be agreed by the First Lien Claimholders) and all proceeds thereof, provided, however, that (i) to the extent the Cash Collateral Termination Date shall have occurred, the Maximum Carve-Out Amount shall be funded and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims and (ii) to the extent the Cash Collateral Termination Date shall not have occurred, all amounts set forth in section 4(b) of the Sale Support Agreement shall be funded (provided, the Sale shall have been consummated) and the Intercompany Loan shall be paid in full (including all accrued and previously capitalized interest thereon) in cash pursuant to paragraph 5(d) before any payments shall be made on account of the Adequate Protection Super-Priority Claims, in each case, in accordance with the terms of this Final Order. Other than as provided in this Final Order with

respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Adequate Protection Replacement Liens and the Adequate Protection Super-Priority Claims.

(c)     Adequate Protection Payments, Professional Fees and Information.     As further adequate protection, and in consideration, and as a requirement, for obtaining the consent of the First Lien Agent and Majority First Lien Lenders to the entry of this Final Order and the Debtors' consensual use of the Prepetition Collateral, including, without limitation, the Cash Collateral, as provided herein, the Debtors shall (i) within three (3) Business Days of the date of entry of the Interim Order pay to the First Lien Agent a cash amount equal to $973,838.09; provided that such payment is subject to disgorgement in the event that all of the First Priority Liens are determined to be invalid by this Court in a final and non-appealable order, (ii) timely pay in cash all reasonable out of pocket fees, costs and expenses of the First Lien Agent (including, without limitation, payment in advance of the agency fee required to be paid pursuant to Section 2.11(c) of the First Lien Credit Agreement) and its professionals, including, without limitation, Morgan, Lewis & Bockius LLP, as financing counsel, Wachtell, Lipton, Rosen & Katz, as special restructuring and bankruptcy counsel, DLA Piper LLP, as local counsel, one foreign counsel and one financial advisor (collectively, the "*First Lien Professional Fees*"), in each case, on a regular monthly basis during the Chapter 11 Cases, without further notice, motion or application to, order of, or hearing before, this Court; provided that after consummation of the Sale, if the proceeds of the Sale are not sufficient to satisfy the claims of the First Lien Claimholders in full, the First Lien Agent shall pay such fees and expenses from

proceeds of the Sale that would otherwise be distributed to the First Lien Agent for the benefit of the First Lien Claimholders withheld for such purpose, and (iii) deliver to the First Lien Agent, the Second Lien Agent, the Committee and their respective advisors all information, reports, documents and other material that they may reasonably request, either directly or through their professionals (it being understood that the First Lien Agent, the Second Lien Agent and their respective advisors shall be permitted in their sole discretion to distribute such information, reports, documents and other material to the First Lien Claimholders and Second Lien Claimholders, as applicable, upon request). Notwithstanding anything contained herein or otherwise, (A) all such professional fees (in each case, as described above) pursuant to this Final Order shall be subject to recharacterization and reapplication pursuant to further order of this Court if and to the extent the First Lien Obligations are determined by this Court to be undersecured and (B) the Debtors shall not be obligated to reimburse any Prepetition Secured Party with respect to the defense of Claims and Defenses (as defined below) in the event such Claims and Defenses are asserted pursuant to paragraph 7 of this Final Order.

(d)     Notice of Professional Fees. None of the fees, costs and expenses incurred by professionals engaged by the First Lien Agent shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, that such professionals shall submit copies of their respective professional fee invoices to the Debtors, the U.S. Trustee, counsel for the Postpetition Lender and counsel for the Committee (and any subsequent trustee of the Debtors' estates). Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential or privileged information, and the provision of such invoices

01: 11578231.1                070559.1001

shall not constitute any waiver of any privilege (including, without limitation, the attorney-client privilege) or of any benefits of the attorney work product doctrine. The Debtors, the U.S. Trustee, the Postpetition Lender and the Committee (and any subsequent trustee of the Debtors' estates) may object to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses included in any professional fee invoice submitted by such professionals; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on the applicable professional, the First Lien Agent and the Debtors no later than ten (10) days after delivery of the applicable professional fee invoice to the objecting party and (ii) it describes with particularity the specific basis for the objection. Any hearing on an objection to payment of any fees, costs and expenses set forth in such professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. All such unpaid fees, costs and expenses that have not been disallowed by this Court on the basis of an objection filed by the Debtors, the U.S. Trustee, the Postpetition Lender or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute First Lien Obligations and shall be secured by the Adequate Protection Collateral as specified in this Final Order. The Debtors shall pay in accordance with the terms and conditions of this Final Order the undisputed fees, costs and expenses reflected on any professional fee invoice no later than ten (10) Business Days after the submission thereof, or, in the case of any fees, cost and expenses timely objected to by the Debtors, the U.S. Trustee, the Postpetition Lender or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof, no later than ten (10) Business Days after such objection has been resolved by this Court.

01: 11578231.1
070559.1001

(e) <u>Right to Seek Additional Adequate Protection</u>. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. However, subject to the terms of the Intercreditor Agreement, any Prepetition Secured Party may request further or different adequate protection, and the Debtors or any other party in interest may (subject to the Intercreditor Agreement) contest any such request; <u>provided</u> that any such further or different adequate protection shall at all times be subordinate and junior to the DIP Super-Priority Claims and DIP Liens of the Postpetition Lender granted under this Final Order.

(f) <u>Consent to Priming and Adequate Protection</u>. The First Lien Agent and the Majority First Lien Lenders consent to the use of the Prepetition Collateral, including, without limitation, the Cash Collateral, the Prepetition Secured Parties' Adequate Protection and the priming provided for herein; <u>provided</u>, <u>however</u>, that such consent is expressly conditioned upon the entry of this Final Order and shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the Intercompany Loan or any other use of the Prepetition Collateral, including, without limitation, the Cash Collateral other than as specified herein; and <u>provided</u>, <u>further</u>, that (I) such consent shall be of no force and effect in the event this Final Order is not entered or is entered and subsequently reversed, vacated, stayed or modified (unless such reversal, vacatur, stay or modification is acceptable to the First Lien Agent and the Approving Majority First Lien Lenders, in their sole discretion) and (II) in the event of the occurrence of the Cash Collateral Termination Date, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the

01: 11578231.1
070559.1001

continued use of the Prepetition Collateral, including, without limitation, the Cash Collateral, by the Debtors.

5.   **Intercompany Loan**.

(a)   Tranches.   The Intercompany Loan shall consist of a tranche A intercompany term loan in aggregate principal amount equal to $3,800,000 (the "*Tranche A Intercompany Loan*") and a tranche B intercompany term loan in aggregate principal amount equal to $2,200,000 (the "*Tranche B Intercompany Loan*").   The Borrower shall borrow the Tranche A Intercompany Loan and Tranche B Intercompany Loan, in each case, no later than the third day after the entry by the Court of the Interim Order.   The Borrower is hereby authorized, and agrees, to use the proceeds of (i) the Tranche A Intercompany Loan only in accordance with the terms and conditions of this Final Order, including, without limitation, the Approved Budget and Budget Covenants and (ii) the Tranche B Intercompany Loan only in accordance with the terms and conditions of this Final Order, including, without limitation, the Approved Budget and Budget Covenants, and with the prior written consent of the Approving Majority First Lien Lenders (it being understood that the Approving Majority First Lien Lenders shall be deemed to have consented to the Debtors' use of the proceeds of the Tranche B Intercompany Loan to pay the Expense Reimbursement Amount if approved by the Court pursuant to the Bidding Procedures Order and due and payable pursuant to the terms of the Asset Purchase Agreement).

(b)   Interest and Fees.   Interest on the outstanding principal amount of the Intercompany Loan shall be capitalized and added thereto until the outstanding principal amount (including all previously capitalized interest) is paid in full on the Maturity Date (as defined below).   Interest shall accrue at 4.75% per annum.   Interest shall be capitalized quarterly,

commencing with the Debtors' fiscal quarter ending December 31, 2011. No fees, costs, expenses or other charges shall accrue or be payable in connection with the Intercompany Loan.

(c) <u>Maturity</u>. The Intercompany Loan shall mature and be paid in full (including all accrued and previously capitalized interest thereon) in cash on the earlier of September 30, 2012 or the closing of the Sale (the "***Maturity Date***").

(d) <u>Remedies</u>. Failure to pay the entire principal amount of the Intercompany Loan to the Postpetition Lender on the Maturity Date shall constitute a default under the Intercompany Loan (an "***Intercompany Loan Default***"). The Debtors shall cure any Intercompany Loan Default within three (3) Business Days following receipt of notice of such default, <u>provided</u>, that, if the Debtors fail to cure the Intercompany Loan Default, the Postpetition Lender may seek an emergency hearing before this Court for the sole purpose of determining whether an Intercompany Loan Default has occurred and seeking relief from the automatic stay to exercise its rights and remedies with respect to the DIP Collateral (as defined below) in accordance with this Final Order and applicable law.

(e) <u>DIP Liens</u>. As security for the Intercompany Loan, pursuant to Section 364(d)(1) of the Bankruptcy Code the Debtors hereby grant to the Postpetition Lender a perfected first priority, senior priming Lien (the "***DIP Liens***") on, without duplication, all Adequate Protection Collateral (including, without limitation, Cash Collateral) and one hundred percent (100%) of the net proceeds of Avoidance Actions (the "***DIP Collateral***") that is senior and priming to (A) the Prepetition Liens, (B) the Adequate Protection Replacement Liens and (C) any Liens that are junior to the Prepetition Liens, after giving effect to any intercreditor or subordination agreements (the Liens referenced in clauses (A), (B) and (C), collectively, the "***Primed Liens***"). The DIP Liens shall immediately and without any further action by any

01: 11578231.1
070559.1001

Person, be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable upon the date this Court enters this Final Order.

(f)     DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order, for the avoidance of doubt, the DIP Liens granted to the Postpetition Lender shall in each and every case be first priority senior Liens that (i) are subject only to (A) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that (I) after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens and (II) are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement are senior in priority to the Prepetition Liens (collectively, the "*Prepetition Prior Liens*") and (B) the Carve-Out (to the extent provided in the provisions of this Final Order), and (ii) except as provided in sub-clause (i) of this clause (f), are senior to all prepetition and postpetition Liens of any other person or entity (including, without limitation, the Primed Liens). The DIP Liens and the DIP Super-Priority Claims (A) shall not be subject to Sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code or (y) any other intercompany or affiliate Liens of the Debtors, and (C) shall be valid and enforceable in any Successor Case and/or upon the dismissal of any of the Chapter 11 Cases.

(g)     Super-Priority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Final Order the Intercompany Loan shall constitute an allowed super-priority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over

all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Super-Priority Claims), unsecured claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**"). The DIP Super-Priority Claims shall for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof after funding of either (i) the Maximum Carve-Out Amount to the extent the Cash Collateral Termination Date shall have occurred or (ii) all amounts set forth in section 4(b) of the Sale Support Agreement to the extent the Cash Collateral Termination Date shall not have occurred and the Sale shall have been consummated, in each case, in accordance with the terms of this Final Order. Other than as provided in this Final Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Super-Priority Claims.

      6.    **Automatic Postpetition Lien Perfection**. This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the Adequate

Protection Replacement Liens and the DIP Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the Adequate Protection Replacement Liens and the DIP Liens or to entitle the Adequate Protection Replacement Liens and the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, each of the First Lien Agent, the Second Lien Agent and the Postpetition Lender, as applicable (in the case of the First Lien Agent and Second Lien Agent, solely with respect to the Adequate Protection Replacement Liens and in the case of the Postpetition Lender, solely with respect to the DIP Liens), may, in its sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded on the Petition Date. The applicable Debtors shall execute and deliver to each of the First Lien Agent, the Second Lien Agent and the Postpetition Lender, as applicable, all such financing statements, mortgages, notices and other documents as such party may reasonably request to evidence and confirm the contemplated priority of the Adequate Protection Replacement Liens or DIP Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the First Lien Agent, the Second Lien Agent and the Postpetition Lender, as applicable, in its sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such

01: 11578231.1
070559.1001

copy of this Final Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Adequate Protection Collateral or DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable Adequate Protection Collateral or DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Prepetition Secured Parties or Postpetition Lender, as applicable, in accordance with the terms of this Final Order. To the extent that the First Lien Agent or Second Lien Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any First Lien Document or Second Lien Document, the Postpetition Lender shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such First Lien Loan Document or Second Lien Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first for its benefit and second, subsequent to payment in full of the Intercompany Loan, for the benefit of the Prepetition Secured Parties. The First Lien Agent or Second Lien Agent, as applicable, shall serve as agent for the Postpetition Lender for purposes of perfecting its Liens on all Adequate Protection Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

7. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors and Graceway Canada in all circumstances, subject to the rights of other parties in interest only to the extent set forth in this paragraph 7. The Debtors' Stipulations shall be binding upon each such other party in interest, including the Committee and any Chapter 7 trustee or Chapter 11 trustee, unless (i) the Committee or any other party in interest (other than the Debtors or Graceway Canada) obtains the prior (and not *nunc pro tunc*) consent of this Court to commence and actually commences, or, if the Chapter 11 Cases are converted to cases under Chapter 7 and a Chapter 7 trustee is appointed and/or elected, or if a Chapter 11 trustee is appointed, in either case prior to the expiration of the applicable Challenge Period (as defined below), such Chapter 7 trustee or Chapter 11 trustee, as applicable, actually commences, on or before January 19, 2012 (with respect to the Committee) (provided, however, that the Committee must commence any Claims and Defenses (as defined below) challenging the nature, extent, perfection, validity or priority of any or all of the liens or security interests asserted by the First Lien Claimholders or Second Lien Claimholders (such Claim and Defense, a "*Challenge*") no later than the earlier of December 20, 2011 and the date the Sale is consummated) or December 14, 2011 (with respect to any other party in interest) (each such time period, as applicable, shall be referred to as a "*Challenge Period*," and the date that is the last calendar day of each applicable Challenge Period, in the event that no objection or challenge is raised during such Challenge Period, shall be referred to as a "*Challenge Period Termination Date*"), (x) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (y) a contested matter or adversary proceeding against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Obligations, or

01: 11578231.1
070559.1001

the actions or inactions of any or all of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations, or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to those under Sections 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any or all of the Prepetition Secured Parties) (the objections, challenges, actions and claims referenced in clauses (x) and (y), collectively, the "*Claims and Defenses*"), and (ii) such duly authorized plaintiff or movant obtains a final and non-appealable judicial ruling in its favor in any such timely and properly commenced contested matter or adversary proceeding; provided, that as to the Debtors, for themselves and not their estates, and Graceway Canada, for itself and not its estate, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date. If a Chapter 7 trustee or a Chapter 11 trustee is appointed or elected, as applicable, in each case prior to December 14, 2011, the Challenge Period Termination Date with respect to such trustee only shall be the later of (i) December 14, 2011 and (ii) the date that is twenty (20) days after the date on which such trustee is first appointed. Until the applicable Challenge Period Termination Date, any party in interest (other than the Debtors and Graceway Canada, but including the Committee) may assert any applicable Claims and Defenses. If no Claims and Defenses with respect to the First Lien Claimholders or First Lien Obligations have been timely authorized and asserted in any such adversary proceeding or contested matter in accordance with this paragraph 7, then, upon the applicable Challenge Period Termination Date, and for all purposes in these Chapter 11 Cases and any Successor Case, (i) all payments made to the First Lien Claimholders pursuant to the Interim Order and this Final Order or otherwise shall not be subject to any counterclaim, set-off, recoupment, subordination, recharacterization,

01: 11578231.1
070559.1001

defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred with respect to the First Lien Claimholders, (iii) the First Lien Obligations shall be permanently deemed to be an allowed claim, and (iv) the Debtors' Stipulations with respect to the First Lien Claimholders, including, without limitation, the release provisions therein, shall be binding on all parties in interest, including the Committee and any Chapter 7 or Chapter 11 trustee. If no Claims and Defenses with respect to the Second Lien Claimholders or Second Lien Obligations have been timely asserted in any such adversary proceeding or contested matter in accordance with this paragraph 7, then, upon the applicable Challenge Period Termination Date, and for all purposes in these Chapter 11 Cases and any Successor Case, (i) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred with respect to the Second Lien Claimholders and (ii) the Debtors' Stipulations with respect to the Second Lien Claimholders, including, without limitation, the release provisions therein, shall be binding on all parties in interest, including the Committee and any Chapter 7 or Chapter 11 trustee. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, (x) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences shall nonetheless remain binding and preclusive on the Committee (and any subsequent Chapter 7 trustee or Chapter 11 trustee of the Debtors' estates) and on any other party in interest from and after the applicable Challenge Period Termination Date, except solely with respect to the party in interest timely being authorized to assert and actually asserting such Claims and Defenses to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences were expressly challenged in

such timely adversary proceeding or contested matter, and (y) any portion of the Debtors' Stipulations or other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences that is the subject of a timely authorized and filed Claim and Defense shall become binding and preclusive on such party in interest timely being authorized to assert and actually asserting such Claims and Defenses to the extent set forth in any final and non-appealable judicial order resolving such Claim and Defense. Each applicable Challenge Period in respect of the First Lien Obligations may be extended by written agreement of the First Lien Agent and the Majority First Lien Lenders, and in respect of the Second Lien Obligations may be extended by written agreement of the Second Lien Agent and the Required Lenders (as defined in the Second Lien Credit Agreement), as applicable, in their sole discretion without further order of the Court. Nothing in this Final Order vests or confers on any person or entity, including the Committee, standing or authority to pursue any Claims and Defenses or other cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claims and Defenses or other claim against any Prepetition Secured Parties. Local Rule 9006-2 shall not apply to extend the applicable Challenge Period for the Committee or any other party in interest.

8.    **Carve-Out**. Subject to the terms and conditions contained in this paragraph 8, each of the DIP Liens, DIP Super-Priority Claims, Prepetition Liens, Prepetition Obligations, Adequate Protection Replacement Liens and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

(a)    For purposes of this Final Order, "*Carve-Out*" means (i) all unpaid fees required to be paid in these Chapter 11 Cases to the clerk of this Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a), whether arising prior to or after the delivery of

01: 11578231.1          070559.1001

the Carve-Out Trigger Notice (as defined below); (ii) all reasonable and documented unpaid fees and expenses, including, without limitation, success fees, of professionals retained by the Debtors in these Chapter 11 Cases (collectively, the *"Debtors' Professionals"*) that are incurred and earned prior to the delivery by the First Lien Agent of a Carve-Out Trigger Notice, have been or are subsequently allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code, do not exceed the cumulative amount budgeted for each such Debtors' Professional in the applicable line item therefor in the Approved Budget and remain unpaid after application of any retainers (each such budgeted amount, a *"Debtors' Professionals Carve-Out Cap"*); (iii) all reasonable and documented unpaid fees and expenses of professionals retained by the Committee in these Chapter 11 Cases (collectively, the *"Committee's Professionals"*) and all reasonable and documented unpaid expenses of the members of such Committee (*"Committee Members"*) that are, in each case, incurred and earned prior to the delivery by the First Lien Agent of a Carve-Out Trigger Notice and have been or are subsequently allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code, in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $1,000,000 (the *"Committee Professionals Carve-Out Cap"*); (iv) all reasonable and documented unpaid fees and expenses, including, without limitation, success fees, of the Debtors' Professionals that are incurred and/or earned on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice, that are allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code and remain unpaid after application of any retainers, in an aggregate amount not to exceed the sum of (A) if not paid prior to delivery by the First Lien Agent of a Carve-Out Trigger Notice, the Sale Transaction Fee due and owing to Lazard Frères & Co. LLC (*"Lazard"*) as defined in and pursuant to the terms of that certain engagement letter, dated March 12, 2010,

between Lazard and the Borrower (the "*Lazard Success Fee*") and (B) $1,250,000 (the "*Debtors' Professionals Post Carve-Out Cap*"); (v) all reasonable and documented unpaid fees and expenses of the Committee Professionals that are incurred and/or earned on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice and are allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code, in an aggregate amount not to exceed $50,000 (the "*Committee Professionals Post Carve-Out Cap* and together with the Debtors' Professionals Carve-Out Cap, the Debtors' Professionals Post Carve-Out Cap and Committee Professionals Carve-Out Cap, the "*Carve-Out Cap*"); and (vi) payment of the Expense Reimbursement Amount solely in accordance with the terms of the Asset Purchase Agreement and the Bidding Procedures Order (clauses (i) through (vi), collectively, the "*Carve-Out*"). The term "*Carve-Out Trigger Notice*" shall mean a written notice delivered by the First Lien Agent to the Debtors' lead counsel, counsel for the Postpetition Lender, the U.S. Trustee, counsel for the Second Lien Agent, and counsel to the Committee appointed in these Chapter 11 Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default, expressly stating that the Carve-Out is invoked.

(b)     Any payments actually made pursuant to Bankruptcy Code Sections 327, 328, 330, 331, 363, 503, 1103 or otherwise to Debtors' Professionals or Committee's Professionals shall in the case of any payments made on account of any fees and expenses described in clauses (iii), (iv) and (v) of the definition of Carve-Out, reduce the applicable Carve-Out Cap on a dollar-for-dollar basis.

(c)     In the case of the Debtors' Professionals (other than Latham & Watkins LLP and Alvarez & Marsal North America, LLC), any and all retainers shall be applied no later than the date on which the Sale is consummated, it being understood, for the avoidance of doubt,

that any retainer received by any Debtors' Professional (including Latham & Watkins LLP and Alvarez & Marsal North America, LLC) shall be counted against, and shall not be in addition to, the aggregate amount budgeted for such Debtors' Professional in the Approved Budget.

(d)     Notwithstanding any provision in this paragraph 8 to the contrary or otherwise, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, Adequate Protection Collateral, DIP Collateral or proceeds of the Intercompany Loan shall be utilized for the payment of professional fees and disbursements to the extent restricted under paragraph 15 hereof.

(e)     Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Committee, any other official or unofficial committee in these Chapter 11 Cases, or of any other person or entity, or shall affect the right of any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

(f)     On the Cash Collateral Termination Date, if any, the Debtors shall use the proceeds of the Intercompany Loan (subject to paragraph 5(a) above) and Cash Collateral (including, for the avoidance of doubt, proceeds of any liquidated Adequate Protection Collateral) to fund an amount equal to the unused portion of the Maximum Carve-Out Amount into an interest-bearing reserve escrow at a financial institution reasonably acceptable to the First Lien Agent (the "*Carve-Out Escrow Account*") in full and complete satisfaction of the Postpetition Lender's, First Lien Agent's, Second Lien Agent's, First Lien Claimholders' and Second Lien Claimholders' obligations in respect of the Carve-Out; provided, however, that any unused amounts held in the Carve-Out Escrow Account shall continue to be subject to the DIP Liens, Adequate Protection Replacement Liens and Prepetition Liens in accordance with the

01: 11578231.1                     070559.1001

terms hereof. The funds held in the Carve-Out Escrow Account shall only be used by the Debtors to pay such amounts if and when incurred, earned and allowed by this Court under Sections 105(a), 330 and 331 of the Bankruptcy Code (and, with respect to payment the Expense Reimbursement Amount, solely in accordance with the terms of the Asset Purchase Agreement and the Bidding Procedures Order). For the avoidance of doubt, (i) the portion of the Carve-Out Escrow Account pertaining to the period prior to the delivery of the Carve-Out Trigger Notice allocated to each applicable retained professional shall be limited to the amount set forth in the Approved Budget for such professional, (ii) (except for the Lazard Success Fee, which shall be allocated to Lazard) the portion of the Carve-Out Escrow Account pertaining to the Debtors' Professionals Post Carve-Out Cap shall be allocated to each applicable retained Debtors' professional based upon the amount set forth in the Approved Budget for such professional for the period prior to the delivery of a Carve-Out Trigger Notice divided by the total amount set forth in the Approved Budget for all of the Debtors' professionals during the period prior to the delivery of a Carve-Out Trigger Notice and (iii) the portion of the Carve-Out Escrow Account pertaining to the Committee Professionals Post Carve-Out Cap shall be allocated to each applicable retained Committee professional based upon the amount set forth in the Approved Budget for such professional for the period prior to the delivery of a Carve-Out Trigger Notice divided by the total amount set forth in the Approved Budget for all of the Committee professionals during the period prior to the delivery of a Carve-Out Trigger Notice.

9. **Waiver of Section 506(c) Claims**. As a further condition to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, and to the payment of the Carve-Out to the extent provided herein, no costs or expenses of administration of the Chapter 11 Cases or any Successor Case (including, without limitation, any costs and expenses

of preserving or disposing of property securing the Prepetition Obligations) shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Adequate Protection Collateral, the DIP Collateral, the Prepetition Collateral, and the Cash Collateral, in each case, pursuant to Section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the First Lien Agent and the Majority First Lien Lenders and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the First Lien Claimholders.

10. **After-Acquired Property**. The "equities of the case" exception of Section 552 of the Bankruptcy Code shall not apply.

11. **Protection of First Lien Secured Parties' Rights**.

(a) Unless the First Lien Agent and Approving Majority First Lien Lenders shall have provided their prior written consent, there shall not be entered in these proceedings, or in any Successor Case, any order (other than the Interim Order and this Final Order) which authorizes the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Adequate Protection Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Claimholders and the Adequate Protection Super-Priority Claims granted to the First Lien Claimholders (except the Intercompany Loan and any such indebtedness used to refinance the First Lien Obligations in full).

(b) The Debtors (and/or their legal and financial advisors) will (i) maintain books, records and accounts to the extent and as required by the First Lien Documents, (ii) cooperate with, consult with, and provide to the First Lien Agent and the Majority First Lien

01: 11578231.1                    070559.1001

Lenders all such information as required or allowed under the First Lien Documents or the provisions of this Final Order, (iii) permit representatives of the First Lien Agent and Majority First Lien Lenders such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and consult with respect to, the Debtors' respective affairs, finances, properties, business operations and accounts with the Debtors' respective officers, employees and independent public accountants and (iv) permit the First Lien Agent, the Majority First Lien Lenders and their respective representatives, to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

12. **Cash Collection**. From and after the date of the entry of the Interim Order, all collections and proceeds of any DIP Collateral, Adequate Protection Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the First Lien Documents (or in such other accounts as are designated by First Lien Agent from time to time).

13. **Disposition of Collateral**. Except for the Sale and as otherwise permitted under this Final Order, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral, Adequate Protection Collateral or DIP Collateral outside of the ordinary course of business without the prior written consent of the First Lien Agent and the

01: 11578231.1
070559.1001

Majority First Lien Lenders (with respect to the Prepetition Collateral and Adequate Protection Collateral) or Postpetition Lender (with respect to the DIP Collateral), as applicable, (and no such consent shall be implied from any other action, inaction or acquiescence by the First Lien Agent or any First Lien Lender or any order of this Court). Upon any sale or disposition of substantially all of the Adequate Protection Collateral, (i) to the extent the Cash Collateral Termination Date shall have occurred, the Maximum Carve-Out Amount shall be funded and the Intercompany Loan shall be paid in full pursuant to paragraph 5(d) before any payments shall be made on account of the First Lien Obligations and (ii) to the extent the Cash Collateral Termination Date shall not have occurred, all amounts set forth in section 4(b) of the Sale Support Agreement shall be funded and the Intercompany Loan shall be paid in full pursuant to paragraph 5(d) before any payments shall be made on account of the First Lien Obligations.

14. **Relief from Automatic Stay**.

(a) Any automatic stay otherwise applicable to the First Lien Claimholders is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Approving Majority First Lien Lenders to exercise the following remedies immediately upon the occurrence and during the continuance of an Event of Default (subject to the limitations set forth in this Paragraph 14): (i) declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral, including Cash Collateral derived solely from the proceeds of Adequate Protection Collateral, and to use Prepetition Collateral other than in the ordinary course (any such declaration to be made to the Debtors, the Postpetition Lender, counsel to the Committee and the United States Trustee and to be referred to herein as a "*Termination Declaration*" and the date on which the earliest of any such

01: 11578231.1          070559.1001

Termination Declaration occurs being herein referred to as the "**_Termination Declaration Date_**")

and/or (ii) reduce any claim to judgment.

(b)     During the five (5) Business Day period after the Termination Declaration
Date, the Debtors and the Committee shall be entitled to an emergency hearing before the Court
for the sole purpose of contesting whether an Event of Default has occurred and Section 105 of
the Bankruptcy Code may not be invoked by the Debtors in an effort to restrict or preclude any
First Lien Lender from exercising any rights or remedies set forth in this Final Order.  Unless
during such period the Court determines that an Event of Default has not occurred and/or is not
continuing, this Final Order shall automatically terminate (or, if the Approving Majority First
Lien Lenders shall have specified, in their sole discretion, in the Termination Declaration that the
Prepetition Collateral, including, without limitation, Cash Collateral, use arrangement set forth
herein shall instead be reduced or restricted, such use arrangement shall be so reduced or
restricted) at the end of such five (5) Business Day period in accordance with paragraph 3(c),
without further notice or order.  During such five (5) Business Day period, the Debtors may not
use Cash Collateral except to pay payroll and other expenses critical to keep the business of the
Debtors operating, in each case, in accordance with the Approved Budget.

(c)     The automatic stay imposed under Bankruptcy Code Section 362(a) is
hereby modified pursuant to the terms of this Final Order as necessary to (i) permit the Debtors
to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities
and obligations to the Prepetition Secured Parties and the Postpetition Lender under this Final
Order, (ii) authorize the Postpetition Lender to retain and apply payments hereunder in
connection with an Intercompany Loan Default and (iii) otherwise implement and effectuate the
provisions of this Final Order.

15. **Restriction on Use of Proceeds**. Notwithstanding anything herein to the contrary, no proceeds from the Intercompany Loan, Adequate Protection Collateral, DIP Collateral, Cash Collateral (including any prepetition retainers funded by any or all of the Prepetition Secured Parties), Prepetition Collateral, or any portion of the Carve-Out may be used by any of the Debtors, the Committee, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code Section 364(c) or (d), or otherwise, other than the Intercompany Loan or loans used to refinance the First Lien Obligations in full; or (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the Prepetition Secured Parties and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses or any Avoidance Actions, in each case, with respect to the Prepetition Secured Parties; (ii) any so-called "lender liability" claims and causes of action with respect to the Prepetition Secured Parties; (iii) any action with respect to the validity, enforceability, priority and extent of the Prepetition Obligations, or the validity, extent, perfection and priority of the Prepetition Liens or the Adequate Protection Replacement Liens (or the value of any of the Prepetition Collateral or Adequate Protection Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the

Prepetition Liens, the Adequate Protection Replacement Liens or the other Prepetition Secured Parties' Adequate Protection; and/or (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the Prepetition Secured Parties hereunder or the Prepetition Documents; provided, however, up to $65,000 in the aggregate of the Committee Professionals Carve-Out Cap and Committee Professionals Post Carve-Out Cap, any Adequate Protection Collateral, any Prepetition Collateral and any Cash Collateral may be used by the Committee to investigate (but not prosecute) the extent, validity and priority of the Prepetition Obligations, the Prepetition Liens or any other claims against the Prepetition Secured Parties so long as such investigation occurs no later than the earlier of December 20, 2011 and the date the Sale is consummated.

16.      **Proofs of Claim**.  The First Lien Agent, the First Lien Claimholders, the Second Lien Agent and the Second Lien Claimholders will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim for the First Lien Agent, the First Lien Claimholders, the Second Lien Agent and the Second Lien Claimholders, as applicable.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, the First Lien Agent for the benefit of itself and the other First Lien Claimholders and the Second Lien Agent for the benefit of itself and the other Second Lien Claimholders is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein or otherwise.

17.      **Preservation of Rights Granted under the Final Order**.

01: 11578231.1

(a)    <u>No Non-Consensual Modification or Extension of Final Order</u>. The Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use the Prepetition Collateral, including, without limitation, the Cash Collateral and the immediate maturity of the Intercompany Loan) if there is entered (except as otherwise provided herein) an order amending, supplementing, extending or otherwise modifying this Final Order without the prior written consent of the First Lien Agent and the Majority First Lien Lenders, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)    <u>Dismissal</u>. If any order dismissing any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the Prepetition Secured Parties' Adequate Protection and DIP Protections shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Prepetition Secured Parties' Adequate Protection or the Intercompany Loan, as applicable, have been paid in full in cash or are otherwise satisfied in full (and that the Prepetition Secured Parties' Adequate Protection and DIP Protections shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) to the extent allowed by applicable law this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Prepetition Secured Parties' Adequate Protection and DIP Protections.

(c)    <u>Modification of Final Order</u>. Based on the findings set forth in this Final Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the Intercompany Loan contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this

01: 11578231.1                               070559.1001

Court or any other court, the Postpetition Lender shall be entitled to the protections provided in Section 364(e) of the Bankruptcy Code.

(d) <u>Survival of Final Order</u>. The provisions of this Final Order, any actions taken pursuant hereto, the Prepetition Secured Parties' Adequate Protection, the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any of the Prepetition Secured Parties or the Postpetition Lender shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization or liquidation in any Chapter 11 Case, converting any Chapter 11 Case to a case under Chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court, or terminating the joint administration of these Chapter 11 Cases or by any other act or omission. The terms and provisions of this Final Order, including the Prepetition Secured Parties' Adequate Protection, the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any of the Prepetition Secured Parties or Postpetition Lender, shall continue in full force and effect notwithstanding the entry of any such order, and the Prepetition Secured Parties' Adequate Protection and DIP Protections shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Final Order.

18. **Other Rights and Obligations**.

(a) <u>Binding Effect</u>. Subject to paragraph 7 above, the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, (i) the Prepetition Secured Parties, the Committee, the Debtors and the Postpetition Lender and their respective successors and assigns, (ii) any Chapter

01: 11578231.1
070559.1001

7 or Chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, (iii) an examiner appointed pursuant to Section 1104 of the Bankruptcy Code and (iv) any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors, in each case, whether in any of the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Case or Successor Case; provided, however, that the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral, including, without limitation, the Cash Collateral, by any Chapter 7 or Chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Chapter 11 Case or Successor Case, other than the Debtors in accordance with the terms hereof.

(b)     No Waiver.  The failure of the First Lien Claimholders to seek relief or otherwise exercise their rights and remedies under this Final Order, the First Lien Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Prepetition Collateral, including, without limitation, Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any First Lien Claimholder, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except as prohibited by this Final Order and the First Lien Documents, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the First Lien Claimholders under the Bankruptcy

Code or under non-bankruptcy law to (i) request conversion of the Chapter 11 Cases to cases under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the First Lien Claimholders. Except to the extent otherwise expressly provided in this Final Order, neither the commencement of the Chapter 11 Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the First Lien Claimholders with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the First Lien Documents, applicable law, or equity.

(c)     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  The First Lien Claimholders shall not (i) be deemed to be in control of the operations of the Debtors or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, in either case on account of their permitting the use of the Prepetition Collateral, including, without limitation, the Cash Collateral, or their exercising any rights or remedies as and when permitted pursuant to this Final Order.

(d)     No Marshaling.  Neither the First Lien Claimholders nor the Postpetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(e)     Amendments.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in

writing, signed by on behalf of all the Debtors and the First Lien Agent (after having obtained the approval of the Majority First Lien Lenders) and, except as provided herein, approved by this Court; provided, however, that any waiver, modification or amendment of any of the provisions hereof relating to the Intercompany Loan shall also be signed by or on behalf of the Postpetition Lender.

(f)     Inconsistency.  In the event of any inconsistency between the terms and conditions of the Prepetition Documents and the terms and conditions of this Final Order, the provisions of this Final Order shall govern and control.

(g)     Enforceability.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(h)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

(i)     Any reports or notices required to be given by the Debtors under this Final Order shall concurrently be provided to counsel for the Committee.

19.     **[Reserved]**.

20.     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

01: 11578231.1                070559.1001

Dated: November \_\_\_, 2011
       Wilmington, Delaware

                                      _____
                                        UNITED STATES BANKRUPTCY JUDGE

01: 11578231.1                     070559.1001

# EXHIBIT A

## Approved Budget

# EXHIBIT B

## Intercompany Notes